Robert J. Master, Appellant, *v.* Commonwealth of Pennsylvania, State Civil Service Commission, Appellee.

Argued January 11, 1974, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three. Reargued June 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Harry A. Englehart, Jr.,* with him *Englehart, Creany, Englehart & Leahey,* for appellant.

*J. Leonard Langan,* Assistant Attorney General, with him *Welton J. Fischer,* Assistant Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., July 23, 1974:

This is an appeal from an adjudication of the Pennsylvania Civil Service Commission (Commission) which sustained the action of the Pennsylvania Liquor Control Board (PLCB) in removing Robert J. Master (Master) from his position as an Enforcement Officer I, regular status.

On October 18, 1972, two Pennsylvania State Policemen, Troopers Galbraith and Danner, undercover agents working in the Johnstown, Pennsylvania, area observed Master in "Tony's U-Bar." Trooper Galbraith overheard a conversation between Master and one Anthony H. Brown, the licensee of "Tony's U-Bar," concerning this Commonwealth's removal of the tax stamps from liquor bottles and of the ramifications of such an action.[1] Both officers also observed that Master made a Five Dollar ($5.00) bet on a World Series game with Brown.

After these observations were transmitted to Master's superiors in the PLCB, he was notified by mail that he was removed from his position effective February 23, 1973. Master then filed an appeal with the Commission under Section 951(A) of the Civil Service Act, Act of August 5, 1941, P. L. 752, as amended, 72

---

[1] Galbraith's testimony on the alleged content of this conversation will be discussed later in this Opinion.

P.S. §741.951(G). The Commission upheld Master's dismissal and this decision has been appealed to this Court.

Appellate review of a decision of the State Civil Service Commission is limited to a determination of whether the findings of the Commission are supported by substantial evidence and whether an error of law has been committed, or the constitutional rights of the Appellant have been violated. *Ricker v. State Civil Service Commission*, 7 Pa. Commonwealth Ct. 329, 300 A. 2d 293 (1971).

The Commission sustained Master's removal as based on "just cause"[2] due to three alleged acts.

They were:

(1) Master advised a liquor licensee (Anthony H. Brown) that said licensee could save money by substituting Maryland whiskey for Pennsylvania whiskey, when Pennsylvania removed tax stamps from the bottle.

(2) Master placed a $5.00 bet with the licensee on the outcome of a World Series game.

(3) Master failed to file a written report with his superior of gambling in the premises of a licensed establishment.

We shall first discuss the conversation between Master and the licensee of the bar.

Apparently the PLCB and the Commission felt that Master *advised* the licensee to substitute Maryland whiskey for Pennsylvania whiskey to save money once the Pennsylvania stamp tax was removed from the bottles. The Commission determined that this conversation violated a rule found in the Handbook for Enforcement Officers which in effect prohibits "[i]mproper or erroneous advice to licensees and applicants."

---

[2] Section 807 of the Civil Service Act states that a civil service employe may be removed for "just cause."

Initially it should be noted that this Commonwealth's decision to remove the liquor tax stamps was not information privy only to PLCB Enforcement Officers, but was general knowledge, as evidenced by numerous newspaper articles. Therefore, merely to discuss this generally known information or even to be the first to impart it to the licensee could in no way amount to "improper advice to a licensee" or form a basis for Master's removal.

The substance of the Commission's holding on this point was however that Master *advised* the licensee to buy Maryland whiskey. This finding is not supported by substantial evidence in the record and we need only refer to one refrain in the notes of testimony to show such a lack of substantiation: "Question: Did you hear Master advise Mr. Brown to go down to Maryland and get whiskey? Answer of Trooper Galbraith: No, sir."

Therefore the conversation between Master and the licensee cannot be labeled "just cause" for dismissal.

The remaining reasons for sustaining the dismissal of Master cited by the Commission are placing a Five Dollar ($5.00) bet on a World Series game and Master's failure to file a written report with the PLCB on his observation of gambling at a licensed establishment.

Master admitted that he placed a Five Dollar ($5.00) bet on a World Series game with the licensee, who at the time of this wager was not behind the bar but sitting at a stool close to Master. Although we do not condone such action by Master, we cannot believe and do not accept that such a wager amounts to "just cause" for dismissal from one's employment.[3]

---

[3] This Court would appear naive if we did not observe that the World Series evokes considerable interest and discussion for the general public. Often those who have never before placed a wager become caught up in the excitement of the event and dramatize their support for one of the teams by making a bet with an equally interested friend.

A review of the record reveals however, that the placing of a Five Dollar ($5.00) wager is closely tied by the Commission to the additional finding that Master failed to report gambling at a licensed establishment to his superior. Troopers Galbraith and Danner had "Tony's U-Bar" under surveillance for many months, and their testimony indicates frequent incidents of wagering at this particular establishment. Our review of the record and the opinion of the Commission gives us the impression that the Commission somehow imputes this knowledge to Master.

Testimony by the Troopers places Master in this particular bar only once in all the months it was under surveillance. There is no testimony that Master observed anyone placing bets with the licensee or other bartenders. Therefore, Master's first hand knowledge of gambling on these premises as established by the record is limited to the Five Dollar ($5.00) wager he made on the World Series game. We find that in failing to report this bet to his superior when it is taken alone or in conjunction with the bet itself does not amount to "just cause" for removal and we feel the Commission erred as a matter of law in so holding. *See Gibbs v. Civil Service Commission,* 3 Pa. Commonwealth Ct. 230, 281 A. 2d 170 (1971).

While we do not feel that the acts of Appellant warrant removal from his position with the PLCB, we do feel, as previously indicated, that the Appellant un-

As stated above, we do not in any way condone these activities. However, we also feel that we would be remiss, if in evaluating the actions of Master, we completely ignored the fact that placing a small wager on a World Series game has become a *generally accepted* mode of conduct.

Master's action in making this wager was improper. However, the wager was small and as this opinion will further develop, an isolated incident. We cannot in good conscience sustain the dismissal of a man from his livelihood for this relatively minor indiscretion.

wisely placed a wager with the licensee of named establishment, and that some type of discipline was proper in this instance. Therefore we leave it to the Commission to determine, as provided by Section 951 of the Civil Service Act, whether any or all of Appellant's salary lost during the pendency of this case shall be paid upon Appellant's reinstatement.[4] *See Warner v. Civil Service Commission*, 5 Pa. Commonwealth Ct. 169, 289 A. 2d 519 (1972).

### ORDER

AND Now, this 23rd day of July, 1974, the Order of the Civil Service Commission dismissing the appeal of Robert J. Master is hereby reversed and Master is ordered reinstated to his position as Enforcement Officer I, regular status, with the Liquor Control Board. The record is remanded to the Civil Service Commission for consideration as to the amount, if any, to be paid on account of salary or wages lost by Master.

---

[4] While I still hold the view expressed in my concurring and dissenting opinion in *Warner, supra*, I realize this is not the position of the majority of this Court.