**Michael W. MORRISON, Petitioner,**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs February 6, 1995.

Decided May 22, 1995.

Bruce M. Rotfeld, for petitioner.

William E. Fairall, Jr., Asst. Counsel, for respondent.

Before McGINLEY and NEWMAN, JJ., and DELLA PORTA, Senior Judge.

McGINLEY, Judge.

Michael W. Morrison (Morrison) petitions for review of the order of the State Civil Service Commission (Commission) of March 2, 1994, that dismissed the appeal of his removal from employment as a corrections officer. We affirm.

By letter dated April 14, 1993, the superintendent of the State Correctional Institution at Graterford (Correctional Institution) terminated Morrison's employment as a corrections officer for violations of the Department of Corrections Code of Ethics (Ethical Code). Morrison was charged with violating the following subsections of the Ethical Code:

**B. Specific Rules and Regulations— Department of Corrections**

. . . .

2. Only the minimum amount of force necessary to defend oneself or others, to prevent escape, to prevent serious injury or damage to property or to quell a disturbance or riot will be used. Excessive force, violence or intimidation will not be tolerated. *Fighting* or horseplay while on duty is prohibited.

. . . .

9. No employe[e] shall leave his assigned post or leave the institution or grounds without being properly relieved and receiving proper authorization from a supervisor. Proper relief involves communicating any special observations or orders to the relief personnel.

. . . .

11. Employe[e]s are expected to treat their *peers,* supervisors and the general public with respect and conduct themselves properly and professionally at all times; unacceptable conduct or insolence will not be tolerated. (Emphasis added).

Ethical Code 3–6; Reproduced Record R.R. 170a–173a.

The superintendent, in deciding on the appropriate punishment for Morrison, stated that he considered his disciplinary record which follows:

–November, 1988—Written reprimand— threatening a Commissioned Officer.

–November, 1989—3 day suspension—Altercation with a Lieutenant.

–June, 1990—1 day suspension—Refusal to Obey an Order.

–August, 1991—5 day suspension—Altercation with a Sergeant and Lieutenant.

–September, 1991—10 day suspension—Altercation with a Lieutenant.

Letter dated April 14, 1993; R.R. at 2a. The superintendent also pointed out that on October 14, 1992, he issued Morrison a written reprimand "for an incident that normally would have warranted . . . dismissal." *Id.* The superintendent terminated Morrison effective April 16, 1993, and concluded that his "continued threatening, verbally violent and sometimes physically violent interactions with peers and supervisors is unacceptable." *Id.*

Morrison appealed to the Commission challenging his removal from regular employment as a corrections officer at the Correctional Institution. On March 2, 1994, the Commission dismissed the appeal and denied Morrison's motion for judgment. The motion advocated that a referee's findings of fact in an unemployment compensation proceeding collaterally estopped the Commission from conducting its review. Morrison appeals the Commission's order.

The Commission found that on March 27, 1993, Morrison left his assigned post without permission and followed Richard Hedglin (Hedglin), a fellow corrections officer, to another position within the Correctional Institution. The Commission also determined that Morrison "paced back and forth shouting obscenities at Hedglin and then punched him on the side of his face." Adjudication of the State Civil Service Commission, March 2, 1994, at 1, Finding of Fact (F.F.) No. 5. Hedglin retaliated by punching Morrison and a fight ensued until they were separated by another officer. In addition, the Commission found that Morrison had been previously disciplined for actions that occurred from November 1988 to October 1992.

Morrison initially sought unemployment compensation and was denied benefits. On appeal, by order of July 21, 1993, an unemployment compensation referee granted ben-

efits. The referee determined that Morrison's actions did not constitute willful misconduct as defined in Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e), finding 1) that Morrison asked permission to leave his post, 2) that the other officer struck Morrison first, and 3) that Morrison acted largely in self-defense rather than as the aggressor. Unemployment Compensation Referee's Decision, July 21, 1993, at 1, F.F. No. 4–5; R.R. at 194a.

▇▇▇▇ Morrison asserts that he should be reinstated to his position as a matter of law because the issue of his alleged misconduct was previously litigated in the unemployment compensation proceeding and decided in his favor. The sole question for our review is whether prior findings of fact made by an unemployment compensation referee regarding "willful misconduct" preclude the litigation of the issue of "just cause for removal" in a proceeding before the State Civil Service Commission.[1] In short, does the doctrine of collateral estoppel apply?

The Correctional Institution argues that Morrison did not raise the issue of collateral estoppel before the Commission, thereby waiving it. It is clear from the record that Morrison raised this issue before the Commission. The Correctional Institution also argues that Morrison failed to properly authenticate and introduce the unemployment compensation referee's findings into evidence. Because Morrison filed and attached a photocopy of the referee's decision as part of his request for judgment, the decision was properly before the Commission and we must consider the issue of collateral estoppel.

▇▇▇▇ In a second action by the same parties upon a different claim, the judgment in the prior action operates as an estoppel in the second action only if the matters at issue 1) are identical, 2) were actually litigated, 3) were essential to the judgment, and 4) were material to the litigation. *Wright v. Workmen's Compensation Appeal Board (Adam's*

*Mark Hotel),* 163 Pa.Commonwealth Ct. 172, 639 A.2d 1347 (1994), *(citing, Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Company),* 88 Pa.Commonwealth Ct. 76, 488 A.2d 1177 (1985), *appeal denied,* 515 Pa. 616, 530 A.2d 869 (1987)).

In our recent en banc decision *Bortz v. Workers' Compensation Appeal Board (Reznor Division of FL Industries),* —— Pa.Commonwealth Ct. ——, 656 A.2d 554 (1995), we held that a prior decision by an unemployment compensation referee on the issue of willful misconduct did not collaterally estop an employer from asserting unsatisfactory job performance as a defense to a claimant's reinstatement petition brought pursuant to Section 413(a) of The Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 771–774. The present controversy involves a similar issue, insofar as we are asked whether the unemployment compensation referee's findings on the issue of willful misconduct estop the Correctional Institution from asserting that it terminated Morrison for just cause.

In *Bortz,* we recognized that "[t]he Unemployment Compensation Law ... and ... Workers' Compensation Act ... are two distinct acts advancing two separate policies [and that d]eterminations made in one forum do not necessarily preclude the litigation of issues in the other." *Id.,* at 557 (footnotes omitted). This rationale applies in the present case as well because the Unemployment Compensation Law and the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.1–741.1005, which authorizes the Commission to determine just cause, are distinct acts advancing different policies. The Unemployment Compensation Law calls for the compulsory "setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." *See,* Section 3 of the Unemployment Compensation Law, 43 P.S. § 752. Whereas, the only employment regulated under the Civil Service Act is that of civil service employees. The Civil Service Act is

---

1. Our scope of review of a State Civil Service Commission decision is limited to determination of whether the Commission's findings are supported by substantial evidence, whether an error

of law has been committed, or whether constitutional rights have been violated. *Master v. State Civil Service Commission,* 14 Pa.Commonwealth Ct. 393, 322 A.2d 426 (1974).

primarily concerned with the administration of government in the Commonwealth. *See,* Section 2 of the Civil Service Act, 71 P.S. § 741.2.

The Unemployment Compensation Law and the Civil Service Act are also distinguishable in that there is an intermediate level of appeal in the unemployment compensation system, but the Commission is the sole arbiter of appeals under the Civil Service Act. One of the enumerated duties of the Commission is "[u]pon request or on its own motion, as herein provided, in cases of demotion, furlough, suspension and *removal* to conduct investigations, hold public hearings, render decisions on appeals and record its findings and conclusions." (Emphasis added.) Section 203 of the Civil Service Act, 71 P.S. § 741.203.

> Any regular employe[e] in the classified service may, within twenty calendar days of receipt of notice from the appointing authority, appeal in writing to the [C]ommission. Any *permanent separation,* suspension for cause, furlough or demotion on the grounds that such action has been taken in his case in violation of the provisions of this act, upon receipt of such notice of appeal, the [C]ommission shall promptly schedule and hold a public hearing. (Emphasis added.)

Section 951 of the Civil Service Act, 71 P.S. § 741.951 (footnote omitted). If regular classified service employees seek review of their dismissals, their first appeal must be to the Commission.

■■■ In the unemployment compensation scheme, after the department makes the initial determination regarding the validity of an unemployment compensation claim the claimant or employer may appeal and proceed to a hearing before an unemployment compensation referee. *See,* Sections 501, 502 of the Unemployment Compensation Law, 43 P.S. §§ 821, 822. The referee's adjudication is appealable to the Unemployment Compensation Board of Review (Board). *See,* Section 504 of the Unemployment Compensation Law, 43 P.S. § 824. A civil service employee must appeal the appointing authority's decision directly to the Commission, but under the Unemployment Compensation Law a

party appeals a validity determination first to a referee and then to the Board, which acts as the ultimate finder of fact. *Unemployment Compensation Board of Review v. Wright,* 21 Pa.Commonwealth Ct. 637, 347 A.2d 328 (1975).

Morrison asks us to collaterally estop the Commission based on a referee's decision, not a Board determination. The Commission consists of members appointed by the Governor, with the advice and consent of the Senate. Section 201 of the Civil Service Act, 71 P.S. § 741.201. Like the Commission, the Board's members are nominated and appointed by the Governor with the consent of the Senate. Section 203(a) of the Unemployment Compensation Law, 43 P.S. § 763(a). Unemployment compensation referees are appointed by the Secretary of Labor and Industry to hear disputes under the "direction and administrative control of the [B]oard." Section 203(e) of the Unemployment Compensation Law, 43 P.S. § 763(e). Therefore, Morrison asks us to estop one proceeding based on a decision which was made at an entirely different administrative level under an altogether different statutory design.

■■■ Another differentiating factor is that an unemployment compensation referee is concerned with determining an employee's eligibility for benefits, while the Commission's task in the civil service proceeding is to determine whether Morrison was qualified to continue as a corrections officer based on competency, merit and ability. Unemployment compensation is designed as insurance against the burden of indigence resulting from the economic insecurity of involuntary unemployment. Section 3 of the Unemployment Compensation Law, 43 P.S. § 752. The Civil Service Act addresses the operation of the civil service and the means and manner of appointment of employees and how they are transferred, reinstated, or discharged. *Borough of Blawnox Council v. Olszewski,* 505 Pa. 176, 477 A.2d 1322 (1984).

We are not saying that the concepts of just cause and willful misconduct are not in any way similar; each comes into play when an employer decides to discharge an employee,

but they are distinct concepts and are defined differently. The Unemployment Compensation Law and the Civil Service Act both provide adjudicatory forums for disputes between an employer and an employee, each agency has its own rules and regulations and its own distinct jurisdiction. We believe a determination made in one agency does not necessarily preclude the litigation of a similar issue in the other. The specific question here is whether behavior which amounts to willful misconduct is materially and legally different from behavior which constitutes just cause for the dismissal of an employee. We note that Morrison's conduct does have different legal consequences in each administrative forum, particularly with regard to the remedy. Depending on the forum, the ramification of a decision in favor of the dismissed employee is dramatically different. The unemployment referee grants benefits that are legislatively calculated for a closed period. If the Commission determines the employee was not dismissed for just cause the remedy is reinstatement with back pay.

■ It has long been held that "[j]ust cause, justifying the removal of a civil service employe[e], is clearly a different standard from that of wilful [sic] misconduct, rendering the worker ineligible for unemployment compensation benefits." *Lebanon County Board of Assistance v. Unemployment Compensation Board of Review,* 16 Pa.Commonwealth Ct. 558, 560, 332 A.2d 888, 889 (1975). Willful misconduct for the purpose of deciding whether to grant unemployment compensation benefits is 1) the wanton and willful disregard of the employer's interest, 2) the deliberate violation of rules, 3) the disregard of standards of behavior which an employer can rightfully expect from an employee, or 4) negligence which manifests culpability, wrongful intent, evil design, or intentional or substantial disregard for employer's interests or the employee's duties and obligations. *Andrews v. Unemployment Compensation Board of Review,* 159 Pa.Commonwealth Ct. 455, 633 A.2d 1261 (1993).

■ In the proceeding before the Commission, it was essential for the Correctional Institution to apply the relevant legal standard to determine whether Morrison was terminated for just cause in accordance with the standard articulated in Section 807 of the Civil Service Act, 71 P.S. § 741.807. *State Correctional Institution at Graterford, Department of Corrections v. Brumfield,* 141 Pa.Commonwealth Ct. 43, 594 A.2d 852 (1991). Just cause exists only if factors supporting removal are job-related and in some manner rationally and logically touch upon the employee's competency and ability to perform. *Mihok v. Department of Public Welfare, Woodville State Hospital,* 147 Pa.Commonwealth Ct. 344, 607 A.2d 846 (1992). Based on job-related and competency factors, the Commission decided that Morrison was dismissed for just cause.

■ Assuming that Morrison asked permission to leave his post and that he was not the aggressor in the altercation with Hedglin he had a valid defense to the charge of willful misconduct. In *Lebanon,* we held that the inability to follow instructions may constitute just cause for removal, but not necessarily constitute willful misconduct so as to prevent recovery of unemployment compensation benefits by the dismissed employee. Assuming the unemployment compensation referee correctly found Morrison's violations of the Ethical Code were not willful misconduct, that does not preclude the Commission from considering whether there was just cause for dismissal from civil service.

Morrison asserts that the Commission's determination of just cause for removal is invalid because it necessarily subsumes that he was the aggressor in an altercation with a fellow employee and that he did not have permission to leave his post. Review of the record reflects that the Commission found just cause for several different reasons. Although the Commission indicated that Morrison did leave his post without permission, it cited fighting while on duty (regardless of reason) and failure to treat his peers with respect as separate violations of the Ethical Code. In reaching a determination that there was just cause for removal, the Commission also considered that Morrison was previously disciplined for other transgressions from November 1988 to October 1992 during his employment at the Correctional Institution. In summary, the State Civil

Service Commission addressed matters which were *not* essential to the issue decided by the unemployment compensation referee.

The unemployment compensation referee's decision does not satisfy the third prong necessary for estoppel, in other words that the matters at issue in the first adjudication were not essential to the second adjudication. The Commission did not err in finding that the Correctional Institution met its burden of proving just cause to remove Morrison from his position as a corrections officer. After scrutiny, it is clear that there was no estoppel. Accordingly, we affirm the Commission's order.

### ORDER

AND NOW, this 22nd day of May, 1995, the order of the State Civil Service Commission in the above-captioned matter is affirmed.