# Haynes v. French

236

C.P. of Lehigh County, no. 2000-C-627.

*Glennis L. Clark,* for plaintiff.
*Edwin M. Matzkin,* for defendants.

BLACK, *J.,* June 21, 2002—This matter is before the court on the defendants' motion for post-trial relief following a jury verdict in favor of the plaintiff. The plaintiff alleged that her former employer, the corporate defendant, Clemens Industries Inc., failed to pay monies due her under her employment contract. She also alleged that Clemens' president, the individual defendant, Richard French, is personally liable for her unpaid salary under the Pennsylvania Wage Payment and Collection Law, 43 Pa.C.S. §260.1 et seq.

In a special verdict, the jury found that Clemens had materially breached the employment contract; that the plaintiff had not materially breached that contract; that the plaintiff's financial loss from Clemens' breach amounted to $225,000; that French had an active role in making decisions for the corporation; and that the plaintiff did not have an active decision-making role. The jury's findings were molded into verdicts in favor of the plaintiff against the defendant Clemens on Count 1 in the amount of $225,000 and against the defendant French on Count 4 in a like amount.[1]

The defendants have assigned four grounds for a new trial in their post-trial motion. They contend that the trial court erred (1) "in excluding relevant testimony . . . concerning the proceeds of sale of the corporate assets . . . ;"[2] (2) in excluding plaintiff's exhibit 34 from the jury room; (3) in excluding and failing to give collateral estoppel effect to a finding in a prior unemployment compensation proceeding that the plaintiff had been terminated for willful misconduct; and (4) "in excluding relevant evidence and cross-examination on behalf of defendants."[3] The second of these grounds has not been briefed and is therefore waived. *Jara v. Rexworks Inc.,* 718 A.2d

---

1. The plaintiff's complaint asserted claims against five defendants in five separate counts. However, only the first and fourth counts were presented to the jury. Count 5 of the complaint was not pursued at trial. During the trial the plaintiff was granted a voluntary nonsuit as to Counts 2 and 3. After the plaintiff rested her case, a compulsory nonsuit was granted on the plaintiff's claims against all defendants other than Clemens and French. All references to the defendants in this opinion are to the remaining defendants, Clemens and French, only. The caption of the case has been amended accordingly.

2. Plaintiff's motion for post-trial relief, ¶1, p. 1.

3. *Id.,* ¶4, p. 2.

788, 794 (Pa. Super. 1998). The fourth ground is so general and ambiguous as to defy analysis and is therefore waived. *Weir by Gasper v. Estate of Ciao,* 521 Pa. 491, 504, 556 A.2d 819, 825 (1989). We will address, therefore, in this opinion only the first and third grounds asserted. For the reasons stated below, neither of these grounds is meritorious. Therefore, the defendants' motion is denied.

## FACTUAL BACKGROUND

In May 1989 the plaintiff Tanna Haynes, the defendant Richard French, and a third person, Irvin Zimmerman, agreed to acquire the capital stock of two businesses known as Dale Clemens Custom Tackle Inc. and Rodcrafter Press Inc. These three individuals formed a new corporation to make the purchase, and they became the sole stockholders of the new entity. The new corporation was named Clemens Industries Inc., and did business under the trade names Dale Clemens Custom Tackle and Rodcrafter Press.

The purchase price for the stock of Custom Tackle and Rodcrafter Press was $900,000. Most of the funds for the purchase came from a $600,000 loan to the new corporation by Meridian Bank, guaranteed by the plaintiff and French in proportion to their shares of stock in the new corporation. These guarantees of the plaintiff and French were secured by their personal assets. Zimmerman contributed the remaining $300,000 needed for the purchase.

French, Zimmerman, and the plaintiff entered into a shareholders agreement in which they allocated the corporate stock as follows: 390 shares to French, 270 shares to the plaintiff, and 340 shares to Zimmerman. The share-

holders elected themselves as the three directors of the firm; and as directors, they then elected French as president and the plaintiff as vice-president and secretary/treasurer. The plaintiff signed a proxy at this time authorizing French to vote her shares of stock as he saw fit.

The plaintiff was hired as the new firm's full-time bookkeeper. On May 4, 1989, the plaintiff and Clemens entered into a written employment agreement for her services. The agreement was renewable automatically on a year-to-year basis, unless terminated by the plaintiff on 30 days notice or by Clemens for cause or when the plaintiff ceased to be a shareholder of the corporation.

The employment agreement provided in paragraph three that the plaintiff was to receive a salary of "$27,500/$75,000* per annum" for her services.[4] The asterisked reference in the agreement stated:

"The difference ($47,500) shall be payable for a period of five years and is due (1) immediately after completion of the sale of the business after the payoff of the note between Clemens Industries and Meridian Bank and/or (2) upon payoff of the note between Clemens Industries and Meridian Bank. The balance shall be paid to the employee over the next five years in installments as agreed upon by the president and secretary/treasurer of the corporation and then approved by the board of directors."[5]

Clemens repaid the Meridian Bank loan in August 1999, shortly after it sold all the assets of its wholly owned subsidiary, Custom Tackle. However, the plaintiff never received the deferred salary provided in the

4. Plaintiff's exhibit 8, ¶3, p. 2.
5. *Id.*

employment agreement of $47,500 per year, though she had received some small increases in her basic salary during her tenure with the company.

On September 28, 1999, French terminated the plaintiff's employment with Clemens. Shortly before her employment termination, French and Zimmerman, two of the three shareholder/directors, held a telephone meeting in which they voted to remove the plaintiff as an officer of the corporation. The plaintiff was not invited to participate in this meeting.

The defendants contended at trial that the reason for the plaintiff's termination was her misappropriation of corporate funds and her unauthorized use of a corporate credit card for personal purchases. The plaintiff argued at trial that these complaints were merely a pretext for the defendants' real motivation, which was to avoid their obligations to her under the employment and shareholders agreements.

Following her dismissal, the plaintiff applied for unemployment compensation benefits. The Lehigh County Job Center denied her application, making an administrative determination that she had been discharged for willful misconduct and hence was ineligible for benefits under 43 P.S. §802(e). The plaintiff appealed this decision to the Unemployment Compensation Board of Review. Referee S. Harold Geld held several hearings at the conclusion of which he affirmed the job center's ruling, agreeing that the plaintiff was ineligible for unemployment benefits because she had been discharged for willful misconduct. The Unemployment Compensation Board of Review affirmed Referee Geld's decision. The board's decision was affirmed by the Commonwealth Court.

## DISCUSSION

### 1. *The Exclusion of Testimony Concerning the Proceeds of Sale*

Although it is not clear from their post-trial motion, the defendants' brief explains that their first assignment of error relates to a single question in the testimony of Robert Eckstein, Clemens' accountant, who acted as temporary bookkeeper after the plaintiff had been dismissed. At trial the defendants called Eckstein as a fact witness regarding, inter alia, the sale of Custom Tackle's assets. He was not qualified or offered as an expert witness in any field.

The defendants attempted to elicit testimony from Eckstein as to the disposition of funds allegedly received by Clemens from the sale of these assets. The plaintiff objected when defense counsel asked Eckstein, "Did you have occasion to trace the $191,000 from the purchaser through the bookkeeping system?"[6] The basis for the plaintiff's objection was that the defendants were attempting to place before the jury an expert opinion without having qualified the witness as an expert. This objection was sustained, and properly so.

Although the defendants argue that Eckstein was called to testify only as a fact witness, the type of financial analysis required to answer the question posed is beyond the capacity of the average layperson. Tracing the disposition of funds through a bookkeeping system requires a certain degree of expertise in the field of accounting or bookkeeping. Defense counsel had an opportunity to

---

6. Notes of testimony of trial, 6/12/01, at 168.

qualify Eckstein as an expert, but deliberately chose not to do so. The reason may have been that Eckstein had not been listed as an expert witness in the defendant's pretrial statement and had not supplied an expert witness report in advance of trial in accordance with the court's pretrial order.

It is within a trial judge's discretion to exclude testimony by lay witnesses who lack the qualifications or knowledge necessary to express an expert opinion. See *Vattimo v. Eaborn Truck Service Inc.,* 777 A.2d 1163, 1166 (Pa. Super. 2001); see also, *Carpenter v. Pleasant,* 759 A.2d 411, 415-16 (Pa. Commw. 2000). Because Eckstein was not proposed or qualified as an expert at trial, the plaintiff's objection was properly sustained. If the defendants had desired to present Eckstein as an expert witness to trace the flow of cash from the sale of assets through the corporate accounts, they should have qualified him as an expert and submitted an expert report prior to trial. In the absence of this procedure, Eckstein could not properly testify as an expert witness.

Moreover, even assuming arguendo that the objection should have been overruled, post-trial relief is still not warranted because no prejudice inured to the defendants as a result of the ruling. "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Turney Media Fuel Inc. v. Toll Bros. Inc.,* 725 A.2d 836, 839 (Pa. Super. 1999). In the case at issue defense counsel made no offer of proof after the trial court's ruling.[7] Therefore, it is impossible to ascertain what Eckstein's testimony would have been in response to the prohibited

---

7. *Id.* at 168-70.

question. As a result, it is impossible to ascertain how the exclusion of his answer could have affected the outcome of this case.[8]

## 2. *The Unemployment Compensation Proceeding*

After the testimony was concluded at trial, the defendants' attorney asked the court to take judicial notice of the Commonwealth Court's decision on the plaintiff's unemployment compensation claim.[9] I declined to do so because I concluded that the decision was not entitled to collateral estoppel effect in this case.

This ruling was consistent with the decision of the Pennsylvania Supreme Court in *Rue v. K-Mart Corp.,* 552 Pa. 13, 713 A.2d 82 (1998). In *Rue,* also a civil suit, the court refused to give collateral estoppel effect to a finding adverse to the employer in an earlier unemploy-

---

8. In their brief the defendants also allege that the court erred in allowing Eckstein to testify on cross-examination, in response to a question posed by the plaintiff's counsel, whether "off-the-book" payments would be entered in the cash disbursements journal of the corporation. *Id.* at 173-74. However, the defendants never raised this issue in their post-trial motion, and the issue is therefore waived. *Beckner v. Copeland Corp.,* 785 A.2d 1003, 1006 (Pa. Super. 2001). In any event, this question did not seek expert testimony because, unlike the question from defense counsel discussed above, the question by plaintiff's counsel required no analysis of accounting records but merely a statement of the company's bookkeeping policy, with which Eckstein as the company's temporary bookkeeper was presumably familiar. Furthermore, the question posed was an appropriate follow-up to testimony by Eckstein on direct examination that there was no record in Clemens' books of payments from the plaintiff to Custom Tackle. N.T., 6/12/01 at 166. It was legitimate for the plaintiff to ask whether "off-the-book" disbursements would be entered in the cash disbursements journal. Therefore, there was no abuse of discretion or error of law in permitting this testimony.

9. *Id.* at 243.

ment compensation case. In the present case, even though the unemployment compensation decision was adverse to the *employee,* the same result should be obtained.

Ordinarily, collateral estoppel applies when the following conditions are met:

"(1) An issue decided in a prior action is identical to one presented in a later action;

"(2) The prior action resulted in a final judgment on the merits;

"(3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and

"(4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." *Id.* at 17, 713A.2d at 84.

Some of these conditions are met in this case. The decision of the Commonwealth Court, affirming the decision of the Unemployment Compensation Board of Review, is a final judgment on the merits. The plaintiff here was a party to the prior unemployment compensation proceeding. However, two other conditions are not met. First, there is lacking an identity of issues. Second, because of the nature of an unemployment compensation proceeding, the plaintiff was not afforded a full and fair opportunity to litigate the issues relevant to her breach of contract claim in that prior proceeding.

The issue in the unemployment compensation case was whether the plaintiff had been terminated for willful misconduct. A finding of "willful misconduct" by an unemployment referee acts as a bar to unemployment benefits under the Unemployment Compensation Law.

43 P.S. §802(e). "Willful misconduct" has been defined by the Commonwealth Court as:

"(1) the wanton and willful disregard of the employer's interest[s;]

"(2) the deliberate violation of rules[;]

"(3) the disregard of standards of behavior which an employer can rightfully expect from its employe[e;] or

"(4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations." *Kentucky Fried Chicken of Altoona Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commw. 90, 97, 309 A.2d 165, 168-69 (1973).

The Commonwealth Court has held that an employee's unauthorized use of the employer's credit card rises to the level of willful misconduct. *Harmon v. Unemployment Compensation Board of Review,* 66 Pa. Commw. 320, 444 A.2d 806 (1982). Since the plaintiff acknowledged that she had used Clemens' credit card for some personal purchases without authority, the Commonwealth Court affirmed the board's finding that the plaintiff had been guilty of willful misconduct, for purposes of her unemployment compensation claim.

In the instant case, the plaintiff also acknowledged that she had used Clemens' credit card for some personal purchases without specific authority to do so. She claimed at trial, as she had in her unemployment case, that she reimbursed Clemens by using her own cash for corporate expenses.[10] The issue for the jury to decide was

10. N.T., 6/12/01, at 216, 218.

whether the plaintiff's unauthorized use was a material breach of her employment contract. The jury was instructed that an employee has a duty of loyalty and a duty of honesty to her employer in the handling of funds, and that "(a) material breach is a breach that is significant, that is, one that is not trivial."[11] This is a different standard than the standard applicable to the unemployment case. The plaintiff's unauthorized credit card use could have been "willful misconduct" under the standard used in the unemployment case, but not a "material breach" of her duties to her employer under the employment agreement.

In *Morrison v. Department of Corrections,* 659 A.2d 620 (Pa. Commw. 1995), the Commonwealth Court applied similar reasoning. The court held that the finding of an unemployment compensation referee that the petitioner's actions were not willful misconduct did not estop the State Civil Service Commission from determining that the Commonwealth had just cause to remove the petitioner from his position as a corrections officer. In so doing, the court noted that the State Civil Service Commission used a different standard to determine the propriety of the petitioner's termination than did the unemployment referee who had found the petitioner not guilty of willful misconduct. *Id.* at 625.

A second unmet condition for collateral estoppel lies in the significant procedural differences between an unemployment compensation proceeding and a trial in a court of law. Unemployment compensation procedures are designed to give a speedy, informal method for determining claims. There is no pre-hearing discovery. The

---

11. N.T., 6/13/01, at 75. The defendants did not object to any portion of the jury charge.

rules of evidence do not apply. 43 P.S. §825. There is no right to a jury trial, which is guaranteed to citizens of this Commonwealth in civil actions at law by both the Federal Constitution and the Pennsylvania Constitution. U.S. Const, amend. 7; Pa. Const. Art. I, §6. As a practical matter, since the claimant is out-of-work, the claimant is forced to proceed almost immediately, whether or not there has been sufficient time for investigation and research. As a result, because of the need for a speedy, informal process, a party's opportunity to fully and fairly litigate claims or defenses in an unemployment compensation case is considerably limited.

The Pennsylvania Supreme Court has recognized the significant procedural differences between unemployment compensation proceedings and court trials, and has cited these differences as a valid reason to deny collateral estoppel effect to unemployment compensation adjudications. In *Rue v. K-Mart, supra,* the court stated that "proceedings before a referee clearly do not allow parties to litigate issues in the manner available in a court of record," noting that in referee's hearings the rules of evidence do not apply and there is no procedure for pre-hearing discovery. *Id.* at 19, 713 A.2d at 85-86. The court found that the defendant, K-Mart, had not been given a full and fair opportunity to litigate the basis for the employee's termination because of the "fast and informal nature of the proceedings before the referee, as well as the negligible economic consequences thereof. . . ." *Id.* at 21, 713 A.2d at 86. The court concluded:

"The substantial procedural and economic disparities between unemployment compensation proceedings and later civil proceedings negate the preclusive effect of a referee's factual findings." *Id.* at 20-21, 713 A.2d at 86.

The defendant cites *Hodge v. Unemployment Compensation Board of Review,* 735 A.2d 758 (Pa. Commw. 1999) in support of his contention that collateral estoppel should apply in the present case. In *Hodge,* the Commonwealth Court affirmed application of collateral estoppel by the Unemployment Compensation Board of Review to a prior finding made by a court of common pleas that the claimant was engaged in the unauthorized practice of law on the employer's premises and on the employer's time. However, *Hodge* is easily distinguishable because the prior finding in that case was made by a court of law, not an administrative judge or a referee. Therefore, none of the concerns about procedural inequities that exist in this case are implicated.

The defendants also argue that the holding in *Rue* should not apply here because the decision in that case was adverse to the employer, K-Mart. The defendants point out that K-Mart had little incentive to litigate the award of unemployment compensation, because the outcome of such a proceeding had only negligible economic consequences to K-Mart. On the other hand, an employee does have a compelling incentive to litigate an unemployment claim because a loss of benefits in that proceeding could have a substantial economic effect on the employee.

However, the distinction proposed by the defendants does not withstand analysis for two reasons. First, the Supreme Court based its decision in *Rue* not only on the limited economic consequences to the employer from an adverse referee's decision, but also on the "procedural . . . disparities" between unemployment compensation proceedings and court trials. *Rue, supra* at 20, 713 A.2d at 86. These procedural disparities exist for the employee

as well as the employer. Thus, the distinction posited by the defendants is not valid.

Second, if we were to adopt the defendants' position, an unjust and unbalanced situation in favor of the employer would surely result. Under the defendants' theory, if the employer *prevails* in the compensation proceeding, the decision is binding on the employee. However, pursuant to *Rue, supra,* if the employer *loses* the compensation case, the decision is not binding on the employer. This is an inequitable "heads I win, tails you lose" result for the employer. If the employer has a potential contract dispute with an employee, the employer can vigorously defend the unemployment compensation claim. If the employer loses, he still has another bite at the apple in the subsequent civil suit. If the employer wins, the employee would be deprived of the chance to present his contract claim before a jury in a civil trial proceeding. Such a lack of mutuality is inherently unfair. The only proper solution is to deny the application of collateral estoppel against either party.

This conclusion does not conflict with the recent cases granting preclusive effect in court trials to prior findings in workers' compensation cases. See *e.g., Frederick v. Action Tire Company,* 744 A.2d 762 (Pa. Super. 1999). In *Rue v. K-Mart, supra,* the Pennsylvania Supreme Court expressly distinguished workers' compensation cases and limited its holding to the unemployment compensation context. See *Rue, supra* at 21 n.4, 713 A.2d at 87 n.4. The court stated that collateral estoppel was appropriate for findings in workers' compensation cases because of the distinct statutes and procedures involved issue in those cases. *Id.* Thus, the *Rue* decision leaves undisturbed the line of Pennsylvania appellate cases, of which

*Frederick v. Action Tire Company, supra,* is a recent example, holding that prior findings in workers' compensation cases are a bar to religitation of identical issues in collateral civil actions. By the same token, *Rue* makes it abundantly clear that a different rule applies to unemployment compensation cases.[12]

While it may be desirable from the standpoint of judicial economy to allow the application of collateral estoppel in civil suits to findings in unemployment compensation cases, this would deprive litigants of a full and fair opportunity to litigate their claims and defenses. Moreover, in the instant case there is lacking a complete identity of issues. Therefore, our refusal to grant collateral estoppel effect to the prior unemployment compensation decision was not an abuse of discretion or an error of law.

12. The plaintiff also cites *City of Philadelphia v. Stradford Arms Inc.,* 1 Pa. Commw. 190, 195, 274 A.2d 277, 280 (1971), where the Commonwealth Court ruled that collateral estoppel did not apply in an equity trial to a prior decision of a city zoning board of adjustment. *Id.* at 196, 274 A.2d at 280. The Commonwealth Court reasoned in *Stradford Arms* that the zoning board of adjustment did not have equity jurisdiction, and therefore could not grant injunctions or impose penalties, powers that were within the subject matter jurisdiction of a court of common pleas. *Id.* The court held that collateral estoppel applied only where the prior tribunal had the same subject matter jurisdiction as the current forum. *Id.* at 196, 274 A.2d at 280. However, in view of the decisions of the Commonwealth Court in *Frederick, supra,* and other cases, the continued vitality of *Stradford Arms* is subject to question. See *e.g., J.S., a minor and through his parents and natural guardians H.S. and I.S. v. Bethlehem Area School District, Thomas Doluisio and A. Thomas Kartsotis,* 794 A.2d 936 (Pa. Commw. 2002), where the Commonwealth Court in a 2-1 panel decision held that findings of a school board in a school expulsion proceeding precluded subsequent litigation of the same issue in a civil lawsuit. Thus, *Stradford Arms* should not be read broadly, and I do not base my decision in the instant case on the reasoning in *Stradford Arms.*