Raymond C. GRISWOLD, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (THOMPSON MAPLE PRODUCTS), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 28, 1994.
Decided April 26, 1995.

Lawrence R. Chaban, for petitioner.

John C. Brydon and Donald F. Fessler, Jr., for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

Raymond C. Griswold (Claimant) petitions this Court for review of the order of the Workmen's Compensation Appeal Board (Board) which affirmed the decision of the referee denying Claimant's Reinstatement Petition. We affirm.

Claimant suffered an injury to his back on October 24, 1990, while working for Thompson Maple Products (Employer). Pursuant to a Notice of Compensation Payable filed November 26, 1990, Claimant began receiving total disability benefits for his injury. Claimant and Employer then entered into a Suspension Agreement upon Claimant's return to work at no loss of earnings on January 7, 1991.

Subsequently, Claimant, who had been treating with Daniel Carneval, M.D., a board-certified orthopedic surgeon, was given a note by Dr. Carneval restricting him to light duty work, which Claimant presented to Employer on March 1, 1991. At the end of the day, Claimant was terminated by Employer. On April 12, 1991, Claimant filed the within petition for reinstatement of his workers' compensation benefits, alleging that he had given a light-duty slip to Employer on March 1, 1991 and that he was given light-duty work for that day before being terminated at the end of the day. Claimant further alleged that no other work has been made available since March 1, 1991. Employer in its answer denied Claimant's assertions that his disability status had changed, denied that Claimant was terminated for presenting the light-duty slip, and argued that the sole reason for Claimant's termination was due to his poor attitude and conduct at work.

Following his termination, Claimant filed a claim for unemployment compensation benefits with the Bureau of Unemployment Compensation Benefits and Allowances, which granted benefits pursuant to 402(e) and 401(d)(1) of the Unemployment Compensation Law (Law),[1] and which determination was upheld by the referee following a hearing on August 19, 1991.

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 802(e) and 801(d)(1), respectively.

At hearings before the referee, Claimant testified and presented the deposition testimony of Dr. Carneval, as well as the testimony of Douglas Huffman. In defense, Employer presented the testimony of its president and owner, as well as the plant manager and other co-employees of Claimant. In his decision, the referee found that Employer had made its decision to terminate Claimant before it had knowledge of the light-duty slip issued by Claimant's physician and that Claimant was terminated because of his bad attitude. (Findings of Fact Nos. 12 and 13.) The referee therefore concluded that Claimant had not met his burden and denied the petition. On appeal, the Board affirmed. This appeal followed.[2]

■ Claimant raises a single issue for our review, namely, whether the doctrine of collateral estoppel precluded Employer from asserting as an affirmative defense that Claimant was discharged for cause because the unemployment compensation referee had previously determined that Claimant was not discharged for willful misconduct. Claimant contends that because Employer did not meet his burden before the unemployment compensation referee, this determination precludes Employer from relitigating the issue in defense of Claimant's reinstatement petition proceedings. We disagree.

■ The doctrine of collateral estoppel provides that the determination of an issue in a prior proceeding will be deemed conclusive between the parties in a subsequent proceeding if the following factors are met: 1) the issue decided in the prior case is identical to the one presented in the later case; 2) there was a final judgment of the merits; 3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue; and 4) the determination in the prior proceeding was essential to the judgment. *Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Co.),* 88 Pa.Commonwealth Ct. 76, 488 A.2d 1177

(1985), *petition for allowance of appeal denied,* 515 Pa. 616, 530 A.2d 869 (1987).

In the matter sub judice, although the unemployment compensation referee found that Claimant's actions did not constitute willful misconduct as defined in Section 402(e) of the Law, 43 P.S. § 802(e), we do not believe this precludes Employer from establishing in a workers' compensation proceeding, that Claimant's *own* actions caused his present loss of earnings.

Section 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772 provides that:

> Where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, *unless it be shown that the loss in earnings does not result from the disability due to the injury.* (Emphasis added.)

In *Pieper v. Ametek–Thermox Instruments Div.,* 526 Pa. 25, 34, 584 A.2d 301, 305 (1990), the Supreme Court interpreted Section 413 as requiring a claimant who is currently under a suspension and who is petitioning for reinstatement of his benefits, to prove the following:

> First ... that *through no fault of his own* his earning power is once again adversely affected by his disability. And Second, that the disability which gave rise to his original claim, in fact, continues. (Citation and footnote omitted, emphasis added.)

In contrast, in an unemployment compensation proceeding, it may be found that the employer was justified in terminating the claimant's employment, but that the employer did not establish that the claimant's conduct rose to the level of "willful misconduct" necessary to preclude claimant's eligibility for unemployment compensation benefits under Section 402(e) of the Law, which provides that:

---

**2.** Our scope of review in a workers' compensation case is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether the necessary findings of fact are not supported by substantial evidence. *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.),* 155 Pa.Commonwealth Ct. 556, 625 A.2d 751 (1993).

> An employe shall be ineligible for compensation for any week—
>
> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work....

43 P.S. § 802(e). "Willful misconduct," as defined by the Supreme Court in *Myers v. Unemployment Compensation Board of Review*, 533 Pa. 373, 37–, 625 A.2d 622, 625 (1993), is:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer.

A recent *en banc* decision by this Court considering the same issue concluded that the doctrine of collateral estoppel did not apply. *Bortz v. Workmen's Compensation Appeal Board (Reznor Division of FL Industries)*, —— Pa.Commonwealth Ct. ——, 656 A.2d 554 (1995). After distinguishing the Unemployment Compensation Law and the Workers' Compensation Act in terms of the policies each seeks to promote, the different functions of the Unemployment Compensation Board of Review and the Workmen's Compensation Appeal Board, as well as the different criteria each establishes for eligibility for benefits, this Court went on to distinguish the relevant case law with respect to willful misconduct on the one hand, and discharge not related to the disability on the other hand.

> Where a claimant's loss of earnings results from unsatisfactory job performance and not from a recurrence of a work-related disability a referee should properly deny reinstatement of workers' compensation benefits. *Christopher v. Workmen's Compensation Appeal Board (Dravo Corporation)*, 124 Pa.Commonwealth Ct. 562, 556 A.2d 544 (1989) (claimant was discharged for nonperformance, bad-attitude, and problems with expenses, and not as a result of physical complaints or inability to physically perform his work). A claimant may be prevented from receiving workers' compensation benefits where his or her loss of earnings is due to some action or activity for which the *claimant* was at fault. *Hertz Penske Truck Leasing Co. v. Workmen's Compensation Appeal Board (Bowers)*, [168] Pa.Commonwealth Ct. [657, 651 A.2d 1145] (1994) (interpreting *Christopher*). In contrast, we note this court has reviewed many situations where an employee was discharged for unsatisfactory job performance and received unemployment compensation.
>
> This is a crucial distinction because a determination by an unemployment compensation referee that an employee's behavior did not constitute willful misconduct is not a determination that the employee should not have been discharged. Incompetence, inexperience, or inability may well justify discharge, yet, at the same time, such conduct does not constitute willful misconduct so as to render an employee ineligible for unemployment benefits. *Geslao v. Unemployment Compensation Board of Review*, 103 Pa.Commonwealth Ct. 116, 519 A.2d 1096 (1987).... Reinstatement of workers' compensation benefits are to be denied where the cause of Claimant's loss of earnings is not related to his disability and is based upon a discharge for unsatisfactory job performance.

*Id.* at ——, 656 A.2d at 559 (Footnotes omitted).

■ Accordingly, based upon the well-reasoned opinion in *Bortz*, we conclude, as did the Board in this matter, that the issue decided in the prior unemployment compensation case is not identical to the one presented later in the Workers' Compensation case and therefore the doctrine of collateral estoppel is inapplicable. We now turn to determine whether the record contains substantial evidence to support the referee's findings.

■ In a workers' compensation case, where the Board takes no additional evidence, the referee is the ultimate fact finder and if the testimony, taken as a whole, provides substantial support for the referee's findings, his or her decision will not be dis-

turbed on appeal. *Montgomery County Sheriff's Department v. Workmen's Compensation Appeal Board (Riehl),* 125 Pa.Commonwealth Ct. 6, 556 A.2d 962 (1989). In concluding that Claimant was not entitled to a reinstatement of his workers' compensation benefits, the referee found that Employer had made the decision to discharge Claimant the day before Claimant presented Employer with the light duty slip from Dr. Carneval. (Findings of Fact No. 12.) The referee also found that Claimant was discharged because of his bad attitude and other factors unrelated to his disability or the light duty slip. (Findings of Fact No. 13.)

Charles Thompson, Employer's plant manager, testified that Claimant's attitude was negative with respect to the employees' hourly incentive pay rate and the way production was managed. (August 20, 1991 Hearing, N.T., pp. 6–7.) Mr. Thompson also testified that Claimant had problems getting along with other employees and that other employees expressed that Claimant's negative attitude affected the morale of the production line. *Id.* at 7–8. Mr. Thompson stated that after Claimant received a written reprimand regarding his attitude and production in February of 1990, his attitude and performance improved temporarily, but not on a long-term basis, and that he had to speak to Claimant about his performance and attitude again in June of 1990. *Id.* at 9. Finally, Mr. Thompson testified that the day before Claimant was discharged, he was told that Claimant and another employee had had a confrontation and it was at that point that the decision to terminate Claimant was made. *Id.* at 10.

Charles Henness, the president and owner, testified similarly to Mr. Thompson and stated that they both felt that they had given Claimant ample time to improve both his performance and his attitude but that Claimant refused to acknowledge that he needed to change. (September 18, 1991 Hearing, N.T., pp. 7, 11–12.) Employer also presented the testimony of three of Claimant's co-workers, who all corroborated Employer's assertions that Claimant was continually complaining and in general had a negative attitude. Consequently, given the totality of the testimony believed by the referee, we conclude that there was ample support for the referee's findings and therefore we affirm the order of the Board denying Claimant's petition for reinstatement.

### ORDER

AND NOW, this 26th day of April, 1995, the order of the Workmen's Compensation Appeal Board at No. A93–2710, dated June 13, 1994, is affirmed.