691 A.2d 498

**Patricia RUE,**

v.

**K-MART CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 26, 1996.

Filed March 20, 1997.

Richard J. Antonelli, Pittsburgh, for appellant.

Stephen R. Bolden and David J. Moloynik, Philadelphia, for appellee.

Before CAVANAUGH, CIRILLO, P.J.E., and POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, SAYLOR, EAKIN and SCHILLER, JJ.

POPOVICH, Judge:

In this appeal before the court *en banc,* we are presented with, *inter alia,* the heretofore unsettled question of whether issue preclusion, i.e., collateral estoppel, applies to findings made in an unemployment compensation hearing. Upon review, we find that determinations of an unemployment compensation referee and the unemployment compensation

644

board of review do not merit the application of collateral estoppel.

■ · The public policy underlying the Unemployment Compensation Law mandates that we do *not* adopt a position which would *slow* the unemployment compensation process and shift the cost of unemployment to our state welfare system while protracted litigation of unemployment claims occurs. As the United States Supreme Court has emphasized, "the congressional objective of [the Unemployment Insurance program is] getting money into the pocket of the unemployed worker at the earliest point that is administratively feasible." *California Dept. of Human Resources Development v. Java*, 402 U.S. 121, 136, 91 S.Ct. 1347, 1356, 28 L.Ed.2d 666 (1971). Consequently, the public policies underlying the Unemployment Compensation Law require "fast and informal" actions which do not provide the "full and fair" litigation necessary for application of collateral estoppel.

Accordingly, we must reverse the decision of the court below which granted preclusive effect to the factual determination of an unemployment compensation referee and remand for a new trial.

The record reveals the following facts: Appellee Rue was an employee of Appellant K–Mart for over twelve years and worked in the distribution center for all K–Mart products, including edibles. Appellant had been experiencing problems with employees opening and consuming packages of edibles while on the job. One day, appellee was informed that she had been seen stealing potato chips from the inventory and her employment was terminated. News of her termination spread through the work place and caused· a slowdown in productivity as employees discussed the incident. To address the situation, appellant called a meeting at which it informed appellee's co-workers that she had been fired for eating and concealing a bag of potato chips.

Following her termination, appellee filed for and received unemployment compensation benefits. Appellant appealed the decision, and an unemployment compensation hearing was

held before a referee, who affirmed the award of benefits in a written opinion. In the findings of fact, the referee stated that appellee "did not misappropriate company property and did not eat a bag of potato chips on January 10, 1989." Appellant did not seek an appeal.

Appellee then instituted a civil defamation action, alleging that appellant had made false statements to appellee's co-workers concerning her termination. After a jury trial, appellee was awarded $90,000.00 in compensatory damages, and $1.4 million in punitive damages. Appellant timely filed for post-trial relief, which was subsequently denied. A panel of this court affirmed the lower court's decision on June 12, 1996. However, upon appellant's petition, reargument before this court *en banc* was granted on August 22, 1996, and the panel's decision was withdrawn.

On appeal, appellant argues that the trial court erred as a matter of law and fact in concluding that the doctrine of collateral estoppel applied to an unappealed decision of an unemployment compensation referee. Appellant also asserts that the lower court erred in refusing to enter judgment n.o.v. because the verdict violated the employment at-will doctrine, and communications concerning appellee were shielded from liability by a privilege that was not abused. Finally, appellant contends that the award of punitive damages was contrary to the law and the evidence.

Recently, the Third Circuit of the United States Court of Appeals commented upon collateral estoppel as follows:

"[O]nce a court has decided an issue of fact of law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); see also Restatement (Second) of Judgments § 27 (1982). This doctrine is known as issue preclusion, or more traditionally, as collateral estoppel. See *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). Issue preclusion is based upon the

policy that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991); see also 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4416 (1981) ("later courts should honor the first actual decision of a matter that has been actually litigated"). The doctrine of issue preclusion reduces the costs of multiple lawsuits, facilitates judicial consistency, conserves judicial resources, and "encourage[s] reliance on adjudication." *Allen,* 449 U.S. at 94, 101 S.Ct. at 415.

*Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 547 (3d.Cir.1996); see also *Hebden v. W.C.A.B,* 534 Pa. 327, 632 A.2d 1302 (1993); *City of Pittsburgh v. Zoning Bd. of Adjustment,* 522 Pa. 44, 559 A.2d 896 (1989); Restatement (Second) of Judgments, § 27, comment c (1982).

�as In Pennsylvania, issue preclusion is appropriately invoked when four conditions are met: First, the issue determined in the prior action is identical to that presented in the subsequent action; second, the previous judgment is final on the merits; third, the party against whom the defense is invoked was a party or in privity with a party in the first action; and fourth, the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue on its merits in the prior action. *Bortz v. W.C.A.B.,* 546 Pa. 77, 82, 683 A.2d 259, 261 (1996), *quoting Balent v. City of Wilkes–Barre,* 542 Pa. 555, 564, 669 A.2d 309, 313 (1995), *citing Allen,* 449 U.S. at 94, 101 S.Ct. at 414; *Safeguard Mut. Ins. Co. v.Williams,* 463 Pa. 567, , 345 A.2d 664, 668 (1975); *Shaffer v. Smith,* 543 Pa. 526, 528–30, 673 A.2d 872, 874 (1996).

Presently, appellee argues that all four requirements are met in the present case, and, consequently, the lower court properly prohibited appellant from attempting to prove that appellee misappropriated appellant's property, i.e., stole a bag of potato chips. However, we disagree with appellee. Despite the apparent similarity of issues involved, we are not

convinced that the facts found in the unemployment compensation case merit preclusive effect in the present defamation action because of the vastly differing policy considerations underlying the two actions. In other words, the different policy concerns between the unemployment compensation system and civil actions mandate two vastly different methods of adjudicating facts, and, thus, we conclude that the unemployment compensation process does not provide a party with the "full and fair opportunity to litigate the issue in question" necessary for the application of collateral estoppel.

To understand why we have determined that the issue litigated in the unemployment compensation case is not worthy of estoppel effect in the defamation case *sub judice*, a review of our Supreme Court's decision in *Odgers v. Com., Unemp. Comp. Bd. of Rev.*, 514 Pa. 378, 525 A.2d 359 (1987) is required. Therein, our Supreme Court refused to grant preclusive effect to a Commonwealth Court ruling. In the first ruling, the Commonwealth Court found that the school district employees' work stoppage was a strike within the meaning of the Pennsylvania Public Employee Relations Act ("PERA"). In the second action, individual school employees applied for unemployment compensation, and the Unemployment Compensation Board of Review determined that the Commonwealth Court's characterization of the work stoppage as a strike precluded employees from relitigating the "voluntary" nature of the work stoppage under the provisions of the Unemployment Compensation Law.

Our high court reversed the Unemployment Compensation Board's decision and held that the PERA issue before the Commonwealth Court was not identical to the issue presented in the unemployment compensation action, despite the fact that "on the surface [the issues] appear identical". *Odgers*, 525 A.2d at 358-359. After a lengthy discussion of the different public policy considerations between the Unemployment Compensation Law and the Public Employee Relations Act, the court stated: "It logically follows that the determinations of what constitutes a strike for purposes of PERA is not coextensive with the determination whether a work stoppage

is a strike or a lock-out under the terms of the Unemployment Compensation Law; *these acts embody different policies and involve different rights* (the former attaching to the collective and the latter to the individual)." *Odgers,* 525 A.2d at 359 (Emphasis added).

Analyzing the underlying public policy as mandated by *Odgers, supra,* we must presently decide not merely whether the factual determination made in appellee's unemployment compensation action, i.e., that she did not steal a bag of potato chips, is, on its face, sufficiently similar to that in the defamation suit to merit preclusive effect. We must inquire much further and determine whether the public policy underlying the Unemployment Compensation Law and appellee's civil action for defamation are sufficiently similar to permit the application of collateral estoppel.

Presently, it is readily apparent that the public policy underlying the Unemployment Compensation Law differs greatly from those of a civil action for defamation, and, despite the identical factual issue of whether appellee stole a bag of potato chips, preclusive effect is not warranted. Clearly, the policy goals for a civil action for defamation by a private figure is to prevent defamatory communications from being disseminated in violation of a privilege and to compensate a person for the special harm caused when he or she is defamed. *See, Jaindl v. Mohr,* 432 Pa.Super. 220, 637 A.2d 1353 (1994), *affirmed,* 541 Pa. 163, 661 A.2d 1362 (1995); *Dougherty v. Boyertown Times,* 377 Pa.Super. 462, 547 A.2d 778 (1988); *Sobel v. Wingard,* 366 Pa.Super. 482, 531 A.2d 520 (1987). More important to our analysis is the fact that a civil litigant in our Court of Common Pleas is vested with all the traditional due process rights guaranteed by the United States and Pennsylvania Constitutions.

Vastly different are the purposes behind the Unemployment Compensation Law which is designed to relieve workers who become unemployed through no fault of their own of the hardships flowing from the loss of employment. 43 P.S. § 752; *Gillins v. Unemployment Compensation Bd. of Rev.,* 534 Pa. 590, 633 A.2d 1150 (1993). The issue to be decided in

an unemployment setting is whether the employee's conduct rose to the level of "willful misconduct" such that the employee is not entitled to unemployment compensation benefits. *Bortz*, 683 A.2d at 262; *Johnsonbaugh v. Department of Pub. Welfare*, 665 A.2d 20, 23 (Pa.Cmwlth.1995); *Morrison v. Dep't of Corrections*, 659 A.2d 620, 623–624 (Pa.Cmwlth.1995); *Griswold v. Workmen's Compensation Appeal Bd.*, 658 A.2d 449, 452 (Pa.Cmwlth.1995), *allocatur denied*, 542 Pa. 651, 666 A.2d 1059 (1995).

■ The fundamental determination in the unemployment setting of whether an employee committed "an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer", is distinctly different from the fundamental determination in a defamation action by an employee against his employer of whether the employer disseminated defamatory statements about the employee in violation of a privilege. *Cf., Griswold*, 658 A.2d at 452–453 (no issue preclusion where there was a clear difference between unemployment issue of "willful misconduct" and civil service commission issue of "just cause"); *Morrison, supra* (same). As the Commonwealth Court stated in *Johnsonbaugh*, 665 A.2d at 24, "It is of tantamount importance that collateral estoppel between administrative agencies is only appropriate when the polices and goals are the same in both proceedings and that is not the situation here."

■ Further, unemployment compensation must be provided to those deserving with *utmost expediency. See, California v. Java*, 402 U.S. at 136, 91 S.Ct. at 1356. To that end, both the Federal government, through the United States Department of Labor, and the Commonwealth have established procedures designed to get "money into the pocket of the unemployed worker at the earliest point that is administratively feasible." *Id.* Authorized by the Social Security

Act, 42 U.S.C. § 503, and the Federal Unemployment Tax Act, 26 U.S.C. § 3301, the Department of Labor has established "appeal promptness standards" which if violated would result in the loss of administrative funding to the Unemployment Compensation Board of Review. See, 20 C.F.R. § 650.3.[1] Our legislature and the Unemployment Compensation Board of Review has also set strict standards to insure prompt payment of unemployment compensation benefits. See, 43 P.S. § 821 *et seq;* 34 Pa.Code § 101.21 *et seq.* In addition to the goal of prompt payment of unemployment benefits to those employees who have lost their jobs through no fault of their own, the Unemployment Compensation law is designed to protect the state treasury by shifting the costs of unemployment from the state welfare system to the employer pool. 43 P.S. § 752; *Swineford v. Snyder County,* 15 F.3d 1258, 1268 (3rd Cir. 1994).

The approach to issue preclusion announced in *Odgers, supra,* and applied by this court today, has been applied repeatedly by the Courts of this Commonwealth and the Federal Courts when applying Pennsylvania law. *See, Bortz, supra* (issue of misconduct decided by unemployment compensation referee is not the same issue as that pertinent to claimant's entitlement to reinstatement of workmen's compensation benefits; collateral estoppel does not apply); *Verbilla v. Workmen's Compensation Appeal Bd.,* 668 A.2d 601 (Pa. Cmwlth.1995) (unemployment compensation referee's factual determination that hospital worker was not abused by patient did not preclude later workmen's compensation action to decide whether worker was injured in the course of employment because the polices and procedures of the two legal schemes

1. In its *amicus curiae* brief, the Unemployment Compensation Board of Review recites the following Department of Labor timeliness standards: sixty percent and eighty percent of referee decisions should be issued within thirty and forty-five days, respectively, from the dates of the appeals from Job Center determinations, 20 C.F.R. § 650.4(b); forty percent and eighty percent of Review board decisions should be issued within forty-five and seventy-five days, respectively, from the date of the appeal from the referee's decisions. The Commonwealth must annually file a performance plan setting forth its strategy for meeting those goals. 20 C.F.R. § 650.5.

were not similar); *Johnsonbaugh, supra* (unemployment compensation determination that worker did not engage in willful misconduct did not preclude later Civil Service Commission decision regarding whether employer dismissed the worker for just cause because the two policies underlying the legal schemes were distinct); *Morrison, supra* (unemployment compensation referee's determination that employee's actions did not constitute willful misconduct did not preclude Civil Service Commission from determining state had just cause to remove employee from his position); *Griswold, supra* (unemployment compensation referee's determination that employee's actions did not amount to willful misconduct did not preclude WCAB from determining that claimant was discharged for good cause); *Pennsylvania State Police v. Commonwealth Unemployment Compensation Board of Review,* 135 Pa.Cmwlth. 71, 578 A.2d 1360 (1990) (no issue preclusion because issue in state police court martial differs from the issue of willful misconduct under the Unemployment Compensation Law); *Dici, supra* (under Pennsylvania law, workmen's compensation ruling which denied litigant's psychic injury claims for sexual and racial harassment was not entitled to preclusive effect in Title VII case since policy considerations differ); *Swineford v. Snyder County,* 15 F.3d 1258 (3rd Cir.1994) (unemployment compensation determination of willful misconduct not given preclusive effect in action for violation of claimant's First Amendment Rights where underlying policies differ); *Kelley v. TYK Refractories Co.,* 860 F.2d 1188 (3d.Cir.1988) (unemployment compensation decision that employee quit voluntarily was not entitled to preclusive effect in federal § 1981 action for racial discrimination by the employee).

Significant to our case was the recent decision of the Third Circuit of the United States Court of Appeals in *Swineford v. Snyder County,* 15 F.3d 1258 (3rd Cir.1994). Therein, the court ruled that the twin goals of the Pennsylvania Unemployment Compensation Law, i.e., provision of quick, basic compensation for workers who become unemployed through no fault of their own and protection of the state treasury by shifting costs of unemployment from the state welfare system

to the employer pool, would be thwarted by imbuing the factual findings of the unemployment compensation hearing board with preclusive effect in later court actions. Circuit Judge Scirica, writing for the court, stated:

Furthermore, sound policy supports this decision [not to give preclusive effect to findings made in an unemployment compensation hearing]. The Unemployment Compensation Law is a depression-era statute. Its twin goals are to provide quick, basic compensation for workers who become unemployed through no fault of their own, and to protect the state treasury by shifting costs of unemployment from the state welfare system to the employer pool. 43 P.S. § 752; see also 76 Am.Jur.2d. Unemployment Compensation § 2 & nn. 7–9 (1992).

Granting preclusive effect to UCBR findings here would undermine the policy of providing quick relief. Under the present system, the procedures to determine benefit eligibility are fast and informal. See, e.g., Pa.Unempl.Ins.Rep. (C.C.H.) ¶ 4111 (if employers do not file an appeal within 15 days of notification their right to appeal is waived); *id.* ¶ 4115 (procedure need not follow common law or statutory rules of evidence); *id.* ¶ 5636 (allowing telephone hearings under certain circumstances). Indeed, in this case, the hearing before the UCBR referee was relatively brief, and while this fact is not dispositive the County was not represented by counsel.

So long as Board rulings are not preclusive, employers have little incentive to contest or appeal board findings. See *Sewall v. Taylor,* 672 F.Supp. 542, 544 (D.Me.1987) ("Defendant's potential liability in the state administrative proceeding is far less than it is in a suit for unlawful discharge pursuant to 42 U.S.C. § 1983.") By contrast, "a broad rule of collateral estoppel might generate undue pressure to litigate to the utmost." Fleming, James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure, § 11.17, at 620 (3d ed. ). To the extent findings are preclusive, employers will litigate vigorously rather than risk compromising their defense in a subsequent suit where their potential liability is

much greater. Applying issue preclusion would result, therefore, in protracted hearings and would slow the receipt of benefits.

The delay caused by granting preclusive effect to Board rulings would likewise frustrate the Act's policy of shifting cost of unemployment from the state to the employer pool. See 43 P.S. § 752. During the period when employers and workers engage in protracted litigation over benefit eligibility the state welfare system will have to bear additional costs in the form of increased welfare payments. See 76 Am. Jur.2d, Unemployment Compensation § n. 9 (1992). Thus, to the extent preclusion creates an incentive to litigate eligibility determinations, it runs counter to the stated policies of the Unemployment Compensation Law. Accordingly, we reaffirm our ruling in *Kelley [v. TYK Refractories Co.,* 860 F.2d 1188 (3d Cir.1988)] and hold Pennsylvania Courts would not apply issue preclusion here because the policies underlying section 1983 and the Unemployment Compensation Law are sufficiently different.

*Swineford,* 15 F.3d at 1269 (footnote omitted).

Further support for our present holding is found in the recent case of *Verbilla v. Workmen's Compensation Appeal Bd.,* 668 A.2d 601 (Pa.Cmwlth.1995). Therein, the Commonwealth Court decided that the public policies behind the Unemployment Compensation Law and the Workmen's Compensation Act were sufficiently different that even when an issue is decided in one forum which is *"identical and essential"* in the other, the claimant is not precluded from relitigation of the issue. *Verbilla,* 668 A.2d at 604 (emphasis added).

In *Verbilla, supra,* the unemployment compensation board determined that the claimant was not physically abused by a patient while he performed his duties as a nursing aide. In the action for workmen's compensation benefits, the workmen's compensation judge found that the claimant's allegations of a work-related physical injury were identical to the allegations made in his unemployment compensation action and concluded that the claimant was collaterally estopped

from relitigating the issue of whether he had been injured by the patient. The *Verbilla* court reversed the workmen's compensation decision on the grounds that the vastly different policy considerations between the two administrative schemes militated against issue preclusion. The Commonwealth Court, citing the numerous aspects of "due process" which are unique to the unemployment compensation system and which weight against its decisions having preclusive effect, stated:

> In *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975), our Supreme Court explained that the law in Pennsylvania on collateral estoppel as set forth in *Pilgrim Food Products Company v. Filler Products, Inc.*, 393 Pa. 418, 143 A.2d 47 (1958), "is merely a judicial translation of the Restatement, Judgement, § 68...." *Schubach*, 461 Pa. at 377, 336 A.2d at 333. Section 68 has since been superseded by the Restatement (Second) of Judgments § 27 (1982) which states the general rule of issue preclusion in language similar to the foregoing standard and the former Restatement section.[6] There are a number of exceptions to this general rule. The Restatement (Second) of Judgments § 28(3) provides that "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts...." The Restatement position concerning this exception is illustrated as follows:

> 6. A brings an action against B to recover for property damage.... The rules governing the conduct of litigation applicable in the court are substantially the same as those in courts of general jurisdiction. After trial verdict and judgment are rendered for A on the basis of a finding of B's negligence. In a subsequent action by B against A ... for personal injuries arising out of the same occurrence, the finding of B's negligence in the first action is conclusive.

> 7. The facts are the same as in Illustration 6, except that the first action is brought in a small claims court which ... operates informally without pleadings, counsel, or

rules of evidence. The finding of B's negligence is not conclusive in the second action.

Restatement (Second) of Judgments § 28 cmt. d, illus. 6, 7 (1982).

Subject to fundamental due process controls, the UCBR is empowered to adopt procedural rules which, though foreign to a strictly adversarial system, are designed to insure that unemployment compensation claims are resolved in compliance with statutory requirements. *Vann v. Unemployment Compensation Board of Review,* 508 Pa. 139, 494 A.2d 1081 (1985). The General Assembly provided in Section 505 of the Law, 43 P.S. § 825, that:

> The manner in which appeal shall be taken ... and the conduct of hearings and appeals, shall be in accordance with rules and procedures prescribed by the board [UCBR] whether or not such rules conform to common law or statutory rules of evidence and other technical rules of procedure.

Given Employer's request in the present matter, to preclude the litigation of an issue previously determined before the UCBR, we find it highly significant that in unemployment compensation hearings the referee 1) can conduct broad cross-examination of the parties and witnesses, 2) is required to assist any unrepresented party, and 3) has broad discretion to determine the order and scope of evidence presented at the hearing.[7] Issue preclusion under these circumstances would frustrate the policy determination by the General Assembly that permits the UCBR to dictate the procedural rules for the adjudication of unemployment compensation claims and also promotes a procedure that authorizes the UCBR to perform the fact finder's role without benefit of viewing the witnesses.[8] Practically speaking such an application of collateral estoppel would essentially require unemployment compensation referees, employers and employees to intensively litigate unemployment compensation cases, something the General Assembly plainly did not intend.

6 The Restatement (Second) of Judgments § 27 (1982) provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

7 The general rules for the conduct of hearings in unemployment compensation cases in 34 Pa.Code § 101.21(a) and (b) provide that:

(a) In a hearing the tribunal may examine the parties and their witnesses. Where a party is not represented by counsel the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties

(b) The tribunal shall determine the order in which the evidence shall be presented in hearings. Within the discretion of the tribunal, the parties shall be permitted to present evidence and testimony which they believe is necessary to establish their rights.

8 Section 504 of the Law, 43 P.S. § 824, expressly provides that the UCBR is the ultimate fact-finding body empowered to resolve conflicts in evidence, to determine the credibility of witnesses, to determine the credibility of witnesses, to determine the weight to be accorded evidence in unemployment cases without taking additional evidence. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985).

*Verbilla,* 668 A.2d at 605–606.

As *Verbilla, supra,* and *Swineford, supra,* clearly reveal, the unemployment compensation system is designed to have "fast and informal" hearings so that unemployed persons receive their benefits as soon as possible. Any change in the system (including a decision of this court) which increases the time and effort required to litigate an unemployment compensation claim would seriously shake the very foundation of Unemployment Compensation Law.

We are convinced that granting preclusive effect to decisions of the Unemployment Compensation Board of Review would cause parties to litigate extensively issues which heretofore have met with little attention. The small amount in controversy in unemployment compensation cases provide little incentive for extensive litigation. If a unemployment compensation claim is made and awarded, an employer merely suffers, at most, a minimal increase in future contributions to

the employer-funded benefits pool. 43 P.S. § 753(g).[2] This small financial risk often causes employers to forego litigation (or at least counseled litigation) of unemployment claims. *See,* Ann C. Hodges, *The Preclusive Effect of Unemployment Compensation determination in Subsequent Litigation,* 38 Wayne L.Rev. 1803, 1830 n. 138 (1992) (a 1979 study by the National Commission on Unemployment Compensation found that only seven percent of claimants and nine percent of employers were represented by counsel at unemployment compensation hearings).

On the other hand, a civil action for damages which may relate in some way to the prior unemployment compensation claim, e.g., wrongful discharge, could involve substantial damages, as the $ 90,000.00 compensatory damage award plus $ 1,400,000.00 in punitive damages *sub judice* prove. As the United States Supreme Court recognized in *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979), application of collateral estoppel is inappropriate "[i]f a defendant in the first action is sued for small or nominal damages [because] he may have little incentive to defend vigorously". *See also, Salida Sch. Dist.,* 732 P.2d at 1165 (no issue preclusion where first action was for unemployment compensation and second action was for a violation of § 1983 damages and over $ 31,000.00 in back pay).

Increased litigation of unemployment compensation claims caused by the possibility of collateral estoppel in subsequent

**2.** In their *amicus curiae* brief, the Unemployment Compensation Board of Review reported that the current maximum weekly benefit is $ 352.00 and the maximum weeks of benefits is twenty-six (26). Therefore, the maximum potential benefit to an employee is $ 9,152.00, which, of course, is paid only to the highest paid workers who are unemployed for a full one-half of a year. Further, in 1995, the average weekly benefit in Pennsylvania was $ 200.93, with an average duration of 16.3 weeks, for a total of approximately $ 3,275.00. *See,* Commonwealth of Pennsylvania, Department of Labor and Industry, *1995 Actuarial Evaluation—Financial Operation of the Pennsylvania Unemployment Compensation Program,* p. 32. We reiterate, however, that the amounts actually paid to the unemployed claimant is not the actual amount which the employer stands to loose. Rather, the employer's financial exposure is limited to a possible increase in his required contribution to the employer-funded benefits pool.

litigation would seriously jeopardize the unemployment compensation systems ability to meet its goal of prompt financial support to those persons unemployed through no fault of their own. That alone would be reason enough to refuse to grant preclusive effect to unemployment compensation decision. However, we are also convinced that "fast and informal" nature of the proceedings do not afford a "full and fair opportunity to litigate the issue in question" in the same manner that a would result from a trial in the Court of Common Pleas.

Once again we point to *Verbilla, supra,* and *Swineford, supra,* for their clear recitations of the particular aspects of procedure in unemployment compensation cases which render those decisions less than "full and fair" for collateral estoppel purposes. The differences between a civil trial and an unemployment compensation hearing are significant in terms of due process. The fact that the Unemployment Compensation Board of Review is the ultimate fact-finder and, yet, may do so *without even hearing evidence* is obviously not the level of "due process" afforded in a court of law. 43 P.S. § 824. Further, formal discovery as it is known in civil actions is nearly non-existent in the unemployment compensation setting. For example, parties have a limited ability to subpoena witnesses and rarely know if the other party will present witnesses at a hearing or what a witness's testimony may be, 34 Pa.Code § 101.31; the referee is required to assist an uncounseled claimant in presenting his case, 34 Pa.Code § 101.21(a); and, under certain circumstances, a hearing may be held by telephone, 34 Pa.Code § 101.121.

Moreover, it is important to remember that the Unemployment Compensation Board of Review is required to construe liberally the Unemployment Compensation Law to achieve its express purpose of promptly relieving workers of the hardships of unemployment, i.e., the law should be liberally interpreted in favor of the employee. *See, Gillins,* 633 A.2d at 1155. Such a bias in favor of one litigant by the ruling authority must not be afforded preclusive effect in a court of law.

Our conclusion is bolstered by the similar treatment given to findings of unemployment compensation boards in other states. *See,* Ohio Revised Code § 4141.28(S) (unemployment compensation referee's findings may not be used in subsequent litigation); Wyoming Statutes § 27–3–406(c) (same); *Board of Educ. v. Gray,* 806 S.W.2d 400, 402–03 (Ky.Ct.App. 1991) ("we simply do not believe that it would be equitable to allow the doctrine to be applied"); *Shovelin v. Central N.M. Elec. Coop.,* 115 N.M. 293, 850 P.2d 996, 1004 (1993) (trial court did not err in refusing to give preclusive effect to Employment Security Department finding); *Ferris v. Hawkins,* 135 Ariz. 329, 660 P.2d 1256, 1259 (App.1983) (collateral estoppel cannot be asserted because action for unemployment compensation and action for reinstatement involve " 'distinct' legal rights"); *Salida Sch. Dist. v. Morrison,* 732 P.2d 1160, 1164–65 (Colo.1987) (applying collateral estoppel to board findings "would be wholly inappropriate, and would frustrate the underlying purposes"); *Storey v. Meijer, Inc.,* 431 Mich. 368, 429 N.W.2d 169 (1988) ("preclusive effect . . . would be incompatible with this legislative policy"). California's unemployment compensation board findings are denied preclusive effect by statute. See *Mahon v. Safeco Title Ins. Co.,* 199 Cal.App.3d 616, 245 Cal.Rptr. 103, 104 n. 1 (1988). See generally Committee on Benefits to Unemployed Person, The Preclusive Effect of Unemployment decisions in Subsequent Litigation, 4 La.Law. 69 (1988) (arguing against applying collateral estoppel).

In holding that a decision of an unemployment compensation referee or the board itself does not warrant preclusive effect in a subsequent civil action, we do not mean to imply that such decisions should never be given preclusive effect. In fact, the Unemployment Compensation Law specifically provides that decisions of a referee or the board are granted preclusive effect in other unemployment compensation proceedings. 43 P.S. § 829; *Chandler v. Unemployment Compensation Bd. of Review,* 135 Pa.Cmwlth. 219, 580 A.2d 460 (1990). Further, unemployment compensation decisions may be worthy of issue preclusion in other administrative proceed-

ings provided, pursuant to an *Odgers* analysis, the administrative schemes and policies underlying the two systems prove to be substantially similar.

We note that our ruling today does not conflict with other decisions of the courts of this Commonwealth which hold that decisions of administrative agencies can enjoy preclusive effect in a civil action or in another administrative proceeding. For example in numerous cases, decisions of workmen's compensation referees that an employee's injury was not work-related have been granted preclusive effect in subsequent tort actions by the employee. *See, Capobianchi v. BIC Corp.*, 446 Pa.Super. 130, 666 A.2d 344 (1995), *appeal denied*, 544 Pa. 599, 674 A.2d 1065 (1996) (decision of workmen's compensation referee that injury was from a degenerative condition and non-work-related was granted preclusive effect in subsequent product liability action for the same injury); *Christopher v. Council of Plymouth Township*, 160 Pa.Cmwlth. 670, 635 A.2d 749 (1993) (workmen's compensation referee's finding that claimant has fully recovered from work-related head injury prevented claimant from relitigating issue in civil suit for work-related disability under the terms of his collective bargaining agreement); *McCullough v. Xerox Corp.*, 399 Pa.Super. 135, 581 A.2d 961 (1990) *appeal denied*, 527 Pa. 624, 592 A.2d 45 (1991) (workmen's compensation referee's finding that employee's injury was not work-related granted preclusive effect in tort action against employer); *Grant v. GAF Corp.*, 415 Pa.Super. 137, 608 A.2d 1047 (1992), *affirmed*, 536 Pa. 429, 639 A.2d 1170 (1994) (workmen's compensation referee's finding that employee's carcinoma was not work-related was entitled to collateral estoppel effect).

However, these workmen's compensation cases are distinguishable from our holding *sub judice* for two clear reasons. First, if the employee cannot met the lesser burden of proof required in the workmen's compensation action, then he should not be given another opportunity to prevail in a civil action. *See, Grant, supra; McCullough, supra.* More importantly, to permit a person to relitigate the identical issue of occupational injury in a common law tort action would "under-

mine the concept of workmen's commpensation (sic) which has served the workers and economic structure of our society so well", *McCullough,* 581 A.2d at 966. In other words, the Workmen's Compensation Act is the sole and exclusive means of recovery against an employer for all injuries arising out of accidents occurring within the course of employment, *Grant,* 608 A.2d at 1059, and permitting relitigation of workmen's compensation issues in subsequent tort actions would void the purpose of the workmen's compensation system. In making our decision, we are fully aware that the fact-finding function and "judicial" procedure followed in the workmen's compensation system is much more akin to that followed in the Court of Common Pleas than that of the unemployment compensation system. Further, the unemployment compensation board is not the "exclusive" means for an employee to litigate issues related to his unemployment, but rather is a forum where an employee can quickly receive the support he needs to avoid financial hardship.

We also recognize that our Supreme Court has permitted the application of collateral estoppel to preclude relitigation of an issue already decided by the Public Utilities Commission. *Elkin v. Bell Tel. Co. of Pa.,* 491 Pa. 123, 133, 420 A.2d 371, 377 (1980). However, that decision is also distinguishable. In *Elkin, supra,* our Supreme Court did not hold that the findings of *all* administrative agencies should be given preclusive effect. Rather, our high court specifically determined that the issue in question had been fully and fairly litigated before the PUC and the issue involved an area *"where the PUC's expertise was needed"*. *Id.,* 420 A.2d at 377 (emphasis added). In reality, *Elkin, supra,* is not about the application of collateral estoppel to determinations of administrative agencies but concerns the doctrine of primary jurisdiction and the protection of the integrity of a regulatory scheme. *Id.,* at 376. In the present case, the Unemployment Compensation Board is not uniquely vested with the expertise necessary to determine whether appellee misappropriated a bag of appellant's potato chips, and we should not permit the decision of an unemployment compensation referee to control the outcome of this case.

In sum, we will not approve the lower court's grant of issue preclusion in this case. To do so would be to hold, in effect, that appellee loses the defamation suit based upon the finding of an unemployment compensation referee, even though significantly different procedures apply and different policies and goals are at stake in the unemployment compensation proceeding. Those policies and procedures operate to render a unemployment compensation hearing less than a "full and fair opportunity to litigate" the facts relevant to the subsequent action. Accordingly, we reverse the decision of the court below and remand for a new trial in accordance with the provisions of this opinion, i.e., appellant may offer evidence to prove the truth of its statement that appellee was fired for stealing a bag of potato chips.[3]

Next, appellant argues that the verdict and judgment violate the employment at-will doctrine, and judgment n.o.v. should be granted. Judgment n.o.v. should be entered when the record is insufficient to support the verdict or is erroneous as a matter of law. *Platt v. John Hancock Mut. Life Ins. Co.*, 361 Pa. 652, 66 A.2d 266 (1949); *Geyer v. Steinbronn*, 351 Pa.Super. 536, 506 A.2d 901 (1986). We find that this employment at-will argument is irrelevant to the proceedings at hand. Appellee sought to recover damages flowing from appellant's statements regarding her termination. Under the employment at-will doctrine, appellant may be free to terminate appellee's employment, but it cannot subsequently make defamatory statements about such termination. Judgment n.o.v. is not warranted on this claim.

Third, appellant argues that it was shielded from liability for any of its communications, based on its conditional privilege, and judgment n.o.v. should be entered. Such a

---

**3.** To the extent that *Frederick v. American Hardware Supply*, 384 Pa.Super. 72, 557 A.2d 779 (1989) *appeal denied*, 523 Pa. 636, 565 A.2d 445 (1989), conflicts with our decision herein, we specifically overrule it. Therein, a panel of this court held that a prior decision of the Unemployment Compensation Board of Review which denied employees compensation because of willful misconduct collaterally estopped those workers from asserting a contract claim for wrongful discharge. We note that the panel did not apply the searching analysis required by our Supreme Court in *Odgers, surpa*, which we apply today.

privilege attaches when the statement is made on a proper occasion, in a proper manner, for a legitimate reason of the speaker and is based on reasonable cause. *Elia v. Erie Ins. Exch.*, 430 Pa.Super. 384, 391, 634 A.2d 657, 660 (1993), *alloc. denied*, 537 Pa. 662, 644 A.2d 1200 (1994). The privilege can be abused, however, if the communication is made in a reckless or negligent manner or if it exceeds the scope necessary to accomplish its purpose. *Id.* at 393, 634 A.2d at 661.

■ Appellant argues that a company representative met with appellee's co-workers because of the anxiety in the work place following appellee's discharge. It contends that it had a right to inform its employees of its reason for discharging appellee, in order to try to restore the productivity of the department. Furthermore, appellant asserts that it reasonably relied on an investigative report of a member of its security department as a basis for its statement to appellee's co-workers.

Appellee, on the other hand, argues that appellant acted with reckless disregard for the truth by disregarding her claim of innocence and her spotless record for over twelve years of service, by refusing to consider the statements of two witness who would vouch for her innocence and by refusing to investigate the incident. Appellee also contends that the workers to whom the statements were made did not have a legitimate interest in obtaining such information and that the sole purpose for appellant's action was to make an example of her.

The trial court noted that the jury heard evidence that appellee worked for K–Mart for over twelve years without any disciplinary problems, the security officer's identification was not based on his personal recognition of her, appellant did not follow its own guidelines regarding this sort of incident, appellant did not pursue any sort of investigation which would have established that appellee had not consumed company property and two co-workers were willing to vouch for appellee's innocence. While appellant presented conflicting evidence and noted that it did not believe that appellee's co-workers were

truthful, the jury is not bound by appellant's credibility determinations. Accordingly, we cannot find that the evidence presented was insufficient for the jury to conclude that, at the very least, appellant failed to exercise due care in ascertaining the truth of its statement before communicating it to several of appellee's co-workers. Once again, judgment n.o.v. is inappropriate.

Finally, appellant argues that the award of punitive damages was unsupported by the law and the evidence. However, we need not address this issue since we herein reverse the lower court and remand for a new trial.

Judgment reversed and remanded for a new trial consistent with the provisions of this opinion. Jurisdiction relinquished.

FORD ELLIOTT, J., files a concurring and dissenting statement.

FORD ELLIOTT, Judge, concurring and dissenting.

While I agree with the majority's analysis and conclusion as to the facts before us instantly, I must respectfully dissent as to that part of the majority's opinion which attempts to distinguish four cases previously decided by courts of this Commonwealth. I believe that the same policy considerations should apply to any collateral estoppel analysis of either an Unemployment Compensation or a Workers' Compensation determination.

Following the analysis of our supreme court in *Odgers v. Com., Unemployment Compensation Board of Review*, 514 Pa. 378, 525 A.2d 359 (1987), the majority thoroughly examines the public policy underlying the Unemployment Compensation Law. The majority then compares that policy with the public policy behind the common law of defamation. In so doing, the majority appropriately observes that the Unemployment Compensation Law is intended to afford claimants a "fast and informal" procedure by which to determine their eligibility for benefits. (Majority opinion at 644, 691 A.2d at 499.) As a result, according to the majority, the unemployment compensation referee's determination that K–Mart's employee, Ms.

Rue, appellee herein, did not steal a bag of potato chips should not preclude K–Mart from raising as a defense to defamation its claim that the same employee did in fact steal the bag of chips. According to the majority, the goal of affording prompt payment of unemployment benefits to employees who have lost their own would be thwarted if employers felt compelled fully to litigate the referee's factual findings as if they were defending a civil suit. (Majority opinion at 651–60, 691 A.2d at 503–07, *quoting Swineford v. Snyder County, Pa.,* 15 F.3d 1258, 1269 (3d Cir.1994), and *Verbilla v. W.C.A.B. (Schuylkill Nursing Ass'n.),* 668 A.2d 601 (Pa.Cmwlth.1995).) I agree.

Additionally, I agree with the majority that the *procedures* utilized during an unemployment compensation hearing do not afford the parties the sort of opportunity fully and finally to litigate either factual or legal issues required under Pennsylvania's four-part test for determining whether issue preclusion is appropriate. (Majority opinion at 645–48, 691 A.2d at 500–01, *citing Bortz v. W.C.A.B.,* 546 Pa. 77, 82, 683 A.2d 259, 261 (1996); majority opinion at 505, *quoting Verbilla, supra.*)

I disagree, however, with the majority's assertion that "our ruling today does not conflict with other decisions of the courts of this Commonwealth which hold that decisions of administrative agencies can enjoy preclusive effect in a civil action or in another administrative proceeding." (Majority opinion at 660, 691 A.2d at 507, *citing Capobianchi v. BIC Corp.,* 446 Pa.Super. 130, 666 A.2d 344 (1995), *appeal denied,* 544 Pa. 599, 674 A.2d 1065 (1996); *Christopher v. Council of Plymouth Township,* 160 Pa.Cmwlth. 670, 635 A.2d 749 (1993); *McCullough v. Xerox Corp.,* 399 Pa.Super. 135, 581 A.2d 961 (1990), *allocatur denied,* 527 Pa. 624, 592 A.2d 45 (1991); and *Grant v.GAF Corp.,* 415 Pa.Super. 137, 608 A.2d 1047 (1992), *affirmed,* 536 Pa. 429, 639 A.2d 1170 (1994).) My reasons for disagreement follow.

First, I must disagree with the majority's rationale for distinguishing these four cases. The majority opines that "if the employee [in the four cases cited *supra* ] cannot meet the

lesser burden of proof required in the workmen's [sic] [1] compensation action, then he should not be given another opportunity to prevail in a civil action." (Majority opinion at 660, 691 A.2d at 507.) The identical argument could, however, be raised instantly: Ms. Rue could argue that K–Mart, having failed to meet the lesser burden of proof to deny her benefits in the unemployment compensation action, should not be given another opportunity to prevail in a civil action. We cannot, in fairness, hold employees to a higher standard than we hold employers. Rather, if we conclude that an employer does not have a full and fair opportunity to litigate in an administrative hearing, we must likewise conclude that an employee lacks the same opportunity.

I must also disagree with the majority's characterization of a workers' compensation hearing as more closely akin procedurally to a civil action than to an unemployment compensation hearing. (Majority opinion at 659, 691 A.2d at 507.) *See Anzaldo v. W.C.A.B. M & M Restaurant Supply Co.*, 667 A.2d 488, 493 (Pa.Cmwlth.1995) (holding that the Workmen's Compensation Act section [§ 834], which states that neither the board nor the referee shall be bound by the common law or statutory rules of evidence in conducting a hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence, permits an information-gathering process which favors admitting all offered evidence into the record), *allocatur denied*, 544 Pa. 676, 678 A.2d 366 (1996); *Liberty Baking Co. v. Com., W.C.A.B.*, 63 Pa.Cmwlth. 517, , 439 A.2d 1276, 1279 (1981) (holding that the rules governing pleading in a workmen's compensation case do not mirror the Pennsylvania Rules of Civil Procedure, and that pleadings in compensation cases should be liberally construed).

Likewise, I cannot agree with the distinction drawn by the majority between an unemployment compensation board, which, I agree, is intended to be a forum for quick resolution of an employee's claim in order to avoid financial hardship, and a workers' compensation board, which, similarly, is intend-

1. The name of this Act was changed in 1993 to *Workers'* Compensation Act. 77 P.S. § 1, July 2, P.L. 190, No. 44, § 1.

ed to provide a forum for quick resolution of an injured employee's claim, without resorting to litigation.

Finally, I must disagree with the majority's conclusion that permitting relitigation of an occupational injury in a common law tort action would undermine the concept of workers' compensation as the sole and exclusive means for recovery against an employer. (Majority opinion at 659–60, 691 A.2d at 507.) The validity of this argument is predicated on the exclusivity provision of the Workers' Compensation Act, 77 P.S. § 481, *not* on the doctrine of collateral estoppel; an employer sued in tort by an employee can simply raise § 481 as a defense.[2]

I recognize that the issue of whether to afford preclusive effect in a subsequent civil action to the findings of fact of a workers' compensation referee is not properly before us today. To that extent, this court's discussion of the four workers' compensation cases is mere *obiter dicta.* *See Commonwealth v. Davis,* 543 Pa. 628, ——, 674 A.2d 214, 217 (1996), *quoting In re Kenin's Trust Estate,* 343 Pa. 549, 23 A.2d 837 (1942) (" 'in every case, what is actually decided is the law applicable to the particular facts; all other conclusions are but obiter dicta' "). Nevertheless, I am convinced that the broad policy concerns at issue instantly, which require our holding today that findings during administrative hearings do not preclude relitigation in subsequent common law actions on separate claims, are indistinguishable from the policy concerns at issue in those workers' compensation cases discussed by the majority. As a result, given the opportunity, I would overrule the cases from this court to the extent that they applied collateral estoppel.

**2.** I would further state my specific disagreement with this court's decisions in *Capobianchi, supra,* and *Grant, supra,* in which an employee or his estate brought a common law tort action against a third party manufacturer of a product, *not* against the employer. In both cases, this court held that the workers' compensation referee's determination that the injuries were not caused by an occurrence or condition at the work place precluded the employees from litigating the cause of their injuries in a tort action against the manufacturer of the product alleged to have caused the injury. I would suggest that our holding today should apply with equal force under the facts of *Capobianchi, supra,* and *Grant, supra.*

668

For all of the foregoing reasons, I concur in that part of the majority's opinion in which preclusive effect is denied to the unemployment compensation referee's findings of fact. I must respectfully dissent, however, insofar as the majority attempts to distinguish the instant case from those workers' compensation cases discussed *supra.* I believe the same analysis should apply.